UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

STATES COURTS
DISTRICT OF TEXAS
FILED
OCT 20 2011

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | AFFIDAVIT IN SUPPORT |
| : | OF EXTRADITION |
| JESUS ENRIQUE REJON AGUILAR : | |
| a.k.a. "Mamito," : | Criminal Number H11-1367 m |
| a.k.a. "Caballero," : | |
| Defendant. : | |

I, Anthony Lewis, being duly sworn, hereby depose and say:

1. I am a citizen of the United States of America.

2. I am a Special Agent of the United States Drug Enforcement Administration ("DEA"), working in Houston, Texas. I have worked as a DEA Special Agent for approximately seven years. Prior to DEA, I was employed as a Montgomery County Constable Deputy for eight years.

3. The DEA is one of the agencies within the United States Government responsible for the enforcement of federal narcotics laws. As a Special Agent with the DEA, I have personally conducted and participated in numerous investigations that have resulted in the arrests and convictions of individuals responsible for trafficking in narcotics.

4. I have participated in investigations involving both the unlawful importation and distribution of controlled substances, arms trafficking and the exchange of arms for narcotics, and material support for a foreign terrorist organization. As part of those investigations, I have conducted or participated in surveillance, the execution of search warrants, and the debriefing of informants and cooperating witnesses. I have also reviewed taped conversations, electronic mail, and drug records relating to narcotics trafficking and the means

and methods of payment for narcotics, including arms-for-narcotics trades. Through my training, education, and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, and with the methods of payment for such drugs. I also am familiar with the federal criminal laws, particularly those laws relating to narcotics and money laundering.

5. The facts in this affidavit are based on conversations I have had with other law enforcement officers involved in this investigation and with cooperating witnesses, as well as my review of reports, documents, and other evidence.

6. My duties have included conducting an investigation of **JESUS ENRIQUE REJON AGUILAR**, aliases "Mamito" and "Caballero" ("**REJON AGUILAR**"), who has been indicted in the case captioned <u>United States of America v. Antonio Ezequiel Cardenas-Guillen, et al.</u>, case number 08-057, in the United States District Court for the District of Columbia. As one of the lead investigators, I am familiar with the evidence in the case. The evidence in this case includes information obtained from eyewitness Jose Luis Del Toro Estrada, lawfully authorized telephone interceptions, and drug seizures. The declaration of Jose Luis Del Toro Estrada is included with this request for extradition.

7. Beginning in approximately 2006, the DEA has been investigating a Mexico-based drug trafficking organization, of which **REJON AGUILAR** is a member. United States law enforcement authorities learned that **REJON AGUILAR** trafficked and imported significant quantities of cocaine and marijuana into the United States from Mexico. According to eyewitnesses and other evidence gathered in this case, **REJON AGUILAR** assisted in arranging financing, purchase, and transportation of significant quantities of cocaine and

2

marijuana for importation from Mexico into the United States, where these narcotics were then distributed and sold.

8. Law enforcement authorities learned that **REJON AGUILAR** worked for a drug trafficking organization based in Mexico known as Los Zetas, which operated together with another Mexico-based drug trafficking organization known as the Gulf Cartel in a combined drug trafficking organization known as The Company. The Company worked interdependently and with other drug trafficking organizations to finance, purchase, transport and distribute cocaine and marijuana destined for the United States. Law enforcement authorities learned that The Company shipped cocaine from drug trafficking organizations in Colombia to Mexico, where the cocaine was stored until it was loaded onto tractor trailers for transportation into the United States. In general, The Company's marijuana originated in Mexico, from which it was also transported into the United States. The law enforcement investigation revealed that **REJON AGUILAR** was actively involved in overseeing The Company's narcotics trafficking activities in Mexico, which directly impacted and aided their drug trafficking activities into and in the United States.

9. Lawfully authorized telephone interceptions have shown that the members of The Company fulfilled a number of responsibilities within the organization to facilitate the purchase and transportation of cocaine from Colombia to Central America, then to Mexico, and finally to the United States. Through these telephone interceptions, law enforcement authorities learned of numerous conversations between members of The Company concerning the shipment and transportation of cocaine and marijuana in quantities of a thousand kilograms, equal to one metric ton, or more. Lawfully authorized interceptions of telephone communications have also

shown conversations between members of The Company involving all aspects of supervising, organizing, and facilitating numerous cocaine and marijuana shipments.

10. Over the course of the investigation, **REJON AGUILAR** was heard discussing the purchase of cocaine and marijuana, the transportation of the drugs, and financial transactions with other members of The Company in lawfully recorded telephone conversations. As explained in greater detail below in paragraph 11 of this affidavit, **REJON AGUILAR**'s voice was identified in three of these telephone conversations by a witness who personally knew **REJON AGUILAR** and worked with **REJON AGUILAR** while they were associated with The Company. Transcripts of six lawfully intercepted telephone calls involving **REJON AGUILAR**, which were recorded on the dates indicated below, are attached to this affidavit as set forth below:

A. On March 7, 2007, DEA agents lawfully intercepted and recorded a telephone conversation between **REJON AGUILAR** and Samuel Flores Borrego ("Flores Borrego"). Based on my knowledge of this investigation, I know that Flores Borrego used the alias names Comandante Tres, Metro Tres, and Tres, and that he was a high-level leader in The Company and the Gulf Cartel. Among other things, the two men discussed a shipment of drugs which belonged to **REJON AGUILAR** seized by law enforcement authorities as it was being crossed into the United States. **REJON AGUILAR** also offered Flores Borrego an alternate crossing which **REJON AGUILAR** had utilized and guaranteed safe passage of between 70 and 100 kilograms of cocaine at a time. A transcript of this conversation is attached to my affidavit as **Attachment D-1**.

4

B.  On May 29, 2007, DEA agents lawfully intercepted and recorded a telephone conversation in which Jaime Gonzalez Duran ("Gonzalez Duran") and Heriberto Lazcano Lazcano ("Lazcano") discussed in coded language, among other things, the price of a kilogram of cocaine along the Mexico/United States border. Gonzalez Duran advised that he had been selling the kilograms of cocaine for $11,000.00 - $11,300.00 per kilogram. Lazcano told Gonzalez Duran that the price of a kilogram of cocaine had gone up to $12,000.00 and for Gonzalez Duran to stop underselling the cocaine. Lazcano further instructed Gonzalez Duran to contact "Mamito" and let him know also. Based on my knowledge of this investigation, I know "Mamito" to be an alias used by **REJON AGUILAR**. A transcript of this conversation is attached to my affidavit as **Attachment D-2.**

C.  On May 30, 2007, DEA agents lawfully intercepted and recorded a telephone conversation in which Gabriel Ballesteros ("Ballesteros"), a high ranking member of The Company, and Flores Borrego discussed in coded language, among other things, the availability of cocaine. Flores Borrego advised Ballesteros that some cocaine had arrived but those kilograms of cocaine belonged to "Mamito," an alias used by **REJON AGUILAR**, and not to Flores Borrego. Flores Borrego stated that he did not have the same power as Mamito. A transcript of this conversation is attached to my affidavit as **Attachment D-3.**

D.  On June 5, 2007, DEA agents lawfully intercepted and recorded another telephone call in which **REJON AGUILAR** and Flores Borrego spoke in coded language about, among other things, a shipment of marijuana **REJON AGUILAR** had

5

ordered through Flores Borrego. **REJON AGUILAR** explained to Flores Borrego how he planned on making $300,000.00 in profit from the sale of a two (2) ton shipment of marijuana and re-investing that profit twice, to allow him to purchase ten (10) tons of marijuana. A transcript of this conversation is attached to my affidavit as **Attachment D-4.**

    E.    On June 26, 2007, DEA agents lawfully intercepted and recorded a telephone conversation in which **REJON AGUILAR** and Flores Borrego discussed in coded language, among other things, the purchase of one (1) ton of good quality, green and smelly marijuana. **REJON AGUILAR** told Flores Borrego that he had a client who would buy twenty thousand (20,000) pounds. A transcript of this conversation is attached to my affidavit as **Attachment D-5.**

    F.    On November 19, 2007, DEA agents lawfully intercepted and recorded a telephone conversation in which Juan Reyes Mejia Gonzalez, alias "R-1," ("Mejia Gonzalez") and Omar Trevino Morales, alias "42," ("Omar Trevino") discussed in coded language, among other things, the assignment of Omar Trevino and Rejon Aguilar to be in charge of the Saltillo, Coahuila plaza for the Zetas. Mejia Gonzalez also detailed his start in the organization with "Mamito," an alias used by **REJON AGUILAR**. A transcript of this conversation is attached to my affidavit as **Attachment D-6.**

    11.    During the course of this investigation, several witnesses have been identified, including the following. One witness, Jose Luis Del Toro Estrada ("Del Toro"), personally knows **REJON AGUILAR** and worked with **REJON AGUILAR** while both were

6

associated with The Company. Based on his drug trafficking activities with The Company, Del Toro pleaded guilty to criminal narcotics trafficking charges in the United States. According to Del Toro, he had direct dealings with **REJON AGUILAR** from the period of approximately January 2005 through approximately September 2008. As such, Del Toro is familiar with and is able to recognize **REJON AGUILAR**'s voice and the voices of other members of The Company. DEA agents played the audio recordings of the six lawfully recorded telephone calls listed in the previous paragraph (subparagraphs 10.A. – 10.F.) for Del Toro and told him the dates on which each call was recorded. Del Toro was able to identify **REJON AGUILAR**'s voice in the three recordings in which **REJON AGUILAR** was a participant. Moreover, Del Toro was able to identify the voices of other members of The Company, provide context for these conversations, and decipher the coded language used by **REJON AGUILAR** and other members of The Company to conduct their narcotics trafficking activities.

## IDENTIFICATION

12. **JESUS ENRIQUE REJON AGUILAR**, alias Mamito, alias Caballero, is a Mexican citizen, born June 9, 1976, in Mexico. He is a Hispanic male, approximately 6 feet, 1 inch tall, weighing approximately 215 pounds, with black hair and brown eyes.

13. During this investigation, I obtained two (2) photographs of **REJON AGUILAR** from law enforcement officials. These photographs were shown to Jose Luis Del Toro, who identified the man in the photographs as **REJON AGUILAR**, the individual with whom Del Toro was involved in drug trafficking activities and whose voice he identified in the

audio recordings referred to above. The two photographs shown to Jose Luis Del Toro Estrada are attached to my affidavit as **Attachment D-7.**

ANTHONY LEWIS
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION


SWORN AND SUBSCRIBED BEFORE ME
THIS _____ DAY OF OCTOBER 2011.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF TEXAS